NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

RED–MORE CORPORATION et al.,
Respondents.

Retail Clerks' Union Local 899, Local
Clerks International Association,
AFL–CIO, Intervenor.

No. 23428.

United States Court of Appeals
Ninth Circuit.

Nov. 14, 1969.

Lynn D. Poole (argued), Arnold Ord-man, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Atty., Washington, D. C., for petitioner.

Alvin F. Slaight, Jr (argued), Leonard S. Janofsky, Carl W. Robertson and Douglas C. Conroy, of Paul, Hastings, Janofsky & Walker, Latham & Watkins, John H. Nelson, Los Angeles, Cal., for respondents.

Laurence D. Steinsapir (argued), George L. Arnold, Jerome Smith, Kenneth M. Schwartz, of Arnold, Smith & Schwartz, Los Angeles, Cal., for intervenor.

Before HAMLEY and BROWNING, Circuit Judges, and BYRNE, District Judge.*

* The Honorable William M. Byrne, Senior United States District Judge for the Central District of California, sitting by designation.

HAMLEY, Circuit Judge:

This case is before the court upon the petition of the National Labor Relations Board (Board) for enforcement of its order of May 16, 1969, directed against respondents. The Board's decision and order, and a supplemental decision and order, are reported at 164 NLRB No. 93 and 169 NLRB No. 63. The charging party, Retail Clerks Union Local No. 899, Retail Clerks International Association, AFL–CIO (Union) has intervened in this enforcement proceeding.

In early 1965, respondent Disco Fair Operating Company, a wholly-owned subsidiary of respondent Red-More Corporation, operated a retail discount department store at Oxnard, California which was owned by respondent Red Crest Company. Red-More, Red Crest and Disco Fair are commonly owned and controlled and constitute a single employer under the Act and are hereinafter referred to collectively as Disco Fair.

Nineteen of the departments of the store were operated by licensees of Disco Fair. The remainder were operated by Disco Fair. On February 11, 1965, the Union demanded recognition as the representative of the employees of Disco Fair and of the licensees at the Oxnard store. The Union asserted that Disco Fair and the licensees were joint employers of all of the persons working in the licensed departments.

Disco Fair, apparently agreeing that it and the licensees at the Oxnard store were joint employers of the employees in the licensed departments, filed with the Board a representation petition requesting an election among all of the employees at the Oxnard store. A hearing was held before the Board's Regional Director. He found and concluded that, "in view of the close contractual relationship between Disco [Fair] and its licensees and, in particular, the substantial influence and control exercised by Disco [Fair] in labor relation policies affecting its licensees," Disco Fair and its licensees were joint employers of the employees in all of the licensed departments of the Oxnard store. The Region-

al Director accordingly directed an election as requested by Disco Fair. The election was held on May 14, 1965; however, the Union did not receive a majority of the valid votes cast.

In October, 1965, respondent Disco Fair opened another retail discount department store in Goleta, California. As in the case of the Oxnard store, Disco Fair operated some of the Goleta store departments but most of the departments were operated under license agreements. Thirteen of the nineteen Oxnard licensees were also Goleta licensees.

On March 18, 1966, the Union by separate petitions, applied to the Board for an election at both the Oxnard and Goleta stores. The petitions were consolidated and a hearing was held thereon before the Regional Director. At the hearing the Union amended its unit description to include both stores in a single bargaining unit. Consistent with its position in the 1965 proceedings with respect to the Oxnard store, the Union asserted that Disco Fair and the licensees at both stores were joint employers of the employees in the licensed departments and that such employees should therefore participate in the election. Disco Fair, however, which had shared that view in 1965 with regard to the Oxnard store, took the position in the 1966 proceedings that they were not a joint employer of the employees of the licensees and that an over-all multi-employer unit including the licensees was inappropriate.

A hearing was held before the Regional Director after which he issued a decision and direction of election. The director ruled that Disco Fair and its licensees (except Food Fair which was already under union contract) at both the Oxnard and Goleta stores were joint employers. Disco Fair's request for review of the Regional Director's decision and direction of election was denied. An election was held in which the Union received a majority of the valid votes cast. The Regional Director then certified the

Union as the collective bargaining representative of all the employees.

One month later, the Union filed unfair labor practice charges against Disco Fair and its licensees at both stores, alleging that they were guilty of a refusal to bargain in violation of section 8 (a) (5) of the National Labor Relations Act, as amended (Act), 29 U.S.C. § 158 (a) (5). The Board issued a complaint and the matter was set for hearing. The hearing was later postponed indefinitely and the Board's General Counsel filed with the Board a motion for a summary judgment. The Board transferred the proceeding to itself and issued a notice to show cause. Respondents filed an opposition statement.

The Board thereafter granted the motion for summary judgment, holding that respondents violated section 8(a) (5) and (1) of the Act by refusing to recognize and to bargain with the Union after it had been certified as the bargaining agent in an appropriate unit. The Board's order, which it now seeks to enforce, directs respondents to cease and desist from the unlawful conduct found, to bargain with the Union upon request, and to post the usual notices. Following the filing of a motion for reconsideration, a hearing and reopening of the record, the Board issued a supplemental decision reaffirming its original decision.

Respondents argue here that the Board did not have authority to entertain, in the first instance, the General Counsel's motion for summary judgment. In support of this view, respondents cite sections 102.24, 102.25 and 102.26 of the Board's rules and regulations, 29 C.F.R. §§ 102.24, 102.25 and 102.26. Sections 102.24 and 102.25 are to the effect that all motions made prior to hearing shall be filed with the Regional Director and, with certain exceptions not here relevant, such motions must be referred to a trial examiner designated to conduct the hearing. Section 102.26 is to the effect that, unless expressly authorized by the rules and regulations, rulings on motions by the Regional Director and trial examiner shall not be appealed directly to the Board except by special permission. Rather, these rulings shall be considered by the Board in reviewing the record.

■ A motion for summary judgment was made to the Board. After the filing of that motion the Board transferred the proceeding from the trial examiner to the Board itself. It was empowered to do this under section 102.50 of its rules and regulations, 29 C.F.R. § 102.50. After such transfer the Board was entitled to pass upon any motion pending in the proceeding.[1] We therefore adhere to the decision of this court in N.L.R.B. v. E-Z Davies Chevrolet, 395 F.2d 191 (9th Cir. 1968), upholding similar Board procedure used in 161 NLRB 1380, 1382–1384 (1966). The portions of sections 102.24, 102.25 and 102.26 relied on by respondents apply only in cases where the proceedings have not been transferred to the Board.

Respondents next argue that this case was not ripe for summary judgment. In this connection they point out that, in their response to the show cause order in the unfair practice proceeding, they offered to prove that the form of license and lease agreements had been changed in certain respects. These changes, respondents asserted, clarified or deleted the provisions relied upon by the Regional Director to support his finding in the 1966 representation proceeding that Disco Fair is given substantial right of control over matters relating to the employees in the leased departments, and is in a position to influence the labor policies of the licensees. Respondents contend that this offer of proof entitled them to an evidentiary hearing and it was therefore improper for the Board to reject the offer of proof and grant the motion for summary judgment on the

---

1. Section 102.25 (29 C.F.R. § 102.25) establishes the Board's authority to rule on motions pending in a proceeding at the time of transfer pursuant to section 102.50, which have not been ruled on by the trial examiner.

basis of the prior findings in the 1966 representation proceeding.

In rejecting respondent's demand for an evidentiary hearing with regard to these alleged changes in the form of license and lease agreements, the Board stated:

"As for the third contention, assuming that the alleged changes in the agreements are new, they were not particularized, nor were copies thereof submitted in order to show their effect, if any, upon the prior finding in the representation proceeding of a joint-employer relationship."

Because of what next transpired, we need not decide whether the quoted reasons for rejecting the demand for an evidentiary hearing were sufficient. After the Board entered the order granting the motion for summary judgment Disco Fair filed a motion for reconsideration, hearing and to reopen the record. In this motion Disco Fair particularized the changes in the license agreements which it had previously alleged had made inappropriate the Regional Director's joint-employer determination.

Disco Fair asserted that the license provision requiring the licensees to abide by Disco Fair's rules and regulations now stated that these rules were not to affect wages, benefits or conditions of employment of the licensees. The clause requiring licensees to discharge employees when requested to do so by Disco Fair were changed to provide that the licensees agreed "to maintain an adequate staff of competent, courteous and efficient personnel." The clause requiring Disco Fair's agreement before licensees could enter into labor agreements was rewritten to require instead that Disco Fair be notified of, and be permitted to sit in on, all labor negotiations of its licensees. Finally, the revised agreements contained a disclaimer that they were to create anything but a landlord-tenant relationship.

The Board issued a supplemental decision, holding, initially, that the asserted changes in the license agreements were not timely offered. In addition, the Board held that, assuming the changes had been made as alleged and were timely relied upon, they would not have changed the Board's decision in granting summary judgment and therefore no evidentiary hearing with regard to the offered evidence was required. In reaching this conclusion the Board analyzed each of the alleged changes in the lease and license agreements and held that " * * * the revised agreements are basically the same as the old agreements in all material respects."

■ Even assuming, contrary to the Board's determination, that a basic change in control was accomplished, it was a change which took place after the entry of the Regional Director's order in the 1966 representation proceedings. These changes, if any, were created by Disco Fair to intentionally alter the facts on which the Regional Director had relied in finding the joint-employer status. The Board properly held that:

"Unit determination based upon fully litigated representation proceedings, such as the joint-employer relation here involved, are entitled to some degree of finality in a subsequent related unfair labor practice case. It is self-evident that we cannot countenance the circumvention of the joint-employer finding through the device of a general allegation of changes in the underlying agreements after each such finding, for to do so would prolong litigation and deny bargaining rights to the employees in the certified unit."

This statement by the Board is consistent with its requirement that an employer bargain with a union for a "reasonable period," usually one year, after certification based on a Board-conducted election. See N. L. R. B. v. Universal Gear Service Corp., 394 F.2d 396 (6th Cir. 1968), in which the court required the employer to bargain with the union despite the fact that the union had lost its majority shortly after certification.

This Board policy does not indefinitely foreclose Disco Fair from asserting the significance of the changes in its lease and license agreements. But it does impart some stability to the bargaining relationship by requiring that Disco Fair bargain with the Union for a reasonable period before seeking reexamination of the joint-employer question on the basis of new arrangements made between that company and its licensees.

 This brings us to the argument that the Board's holding that respondents are joint employers is not supported by substantial evidence on the record considered as a whole. The basic inquiry in cases of this kind is whether the licensor (here Disco Fair) retained control over the labor relations policies of the licensees. Great latitude is given to the Board in making such a determination and it will not be disturbed unless it is arbitrary and capricious.[2] The Regional Director's finding and conclusion in the 1966 representation proceeding was based upon essentially the same license agreements which, in the 1965 proceeding, Disco Fair thought called for a joint-employer determination. We find no reason to overturn the joint-employer determination made in the 1966 representation proceeding.

The order will be enforced.

2. See the cases collected in Gallenkamp Stores Co. v. N. L. R. B., 402 F.2d 525, 530 (9th Cir. 1968).