**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALADDIN HOTEL CORPORATION, d/b/a Aladdin Hotel, Respondent.**

No. 77–3979.

United States Court of Appeals, Ninth Circuit.

Oct. 23, 1978.

Paul J. Spielberg (argued), Washington, D. C., for petitioner.

Stuart Herman (argued), John A. Lawrence (argued) of Richman & Herman, Beverly Hills, Cal., for respondent.

Before CHOY and KENNEDY, Circuit Judges, and ·SCHNACKE,* District Judge.

PER CURIAM:

The National Labor Relations Board petitions for enforcement of an order requiring the employer to bargain with a union certified as a bargaining agent, after a board supervised election. The Board's decisions certifying the union and ordering the employer to bargain are reported at 229 NLRB 499 (1977) and 232 NLRB 153 (1977), respectively. We decline to enforce the order for reasons given below.

In September 1975 a union attempted to organize the clerical employees of the Aladdin Hotel in Las Vegas, Nevada.[1] It was a policy of the union to announce a reduction in its initiation fee from $50 to $25 as an inducement to obtain new members. Accordingly, the union sent a letter to all members of the proposed bargaining unit on or about September 9, 1975. The letter stated in part:

> Our Executive Board has authorized a reduction of the $50.00 initiation fee to $25.00 for · this organizing campaign. When you send in your forms be sure to send $25.00 plus $12.00 dues. These monies will be held in escrow and the dues will apply to the first month after you approve your first labor agreement. If less than a majority send in monies, they will be refunded. If we go to an election and it proves unsuccessful the monies are forfeit.
>
> The quicker you send in the paper work and monies the quicker we can *help you.* We will try to avoid meetings if possible, as a vast majority have been to them in the past. NOW IS THE TIME FOR ACTION.

(Emphasis in original).

The election was held on October 23, 1975, and the employees voted in favor of the union.[2] No issue is raised regarding the balloting.

The employer contends that the reasonable interpretation of the offer to reduce initiation fees is that it promises a reduction only if the employee joins the union during the period before the election. If so construed, the dues reduction offer would interfere with the employees' free and fair choice of a bargaining representative under the rule of *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 276, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). We agree with the employer's interpretation of the offer.

 The letter promised a reduction "for this organizing campaign." The Board contends that this phrase properly is interpreted to include both the period before the election and the period after the election, during which the collective bargaining agreement is being negotiated. If the Board's views are correct, the offer would have been a legitimate one under the *Savair* decision, 414 U.S. at 274 n. 4, 94 S.Ct. 495; accord, *NLRB v. Aaron Brothers Corp.*, 563 F.2d 409, 412 (9th Cir. 1977), but we cannot adopt the Board's construction of the letter. We think the term "organizing campaign" almost certainly would be interpreted by employees as applying to the period before the election but not after. An organizing campaign is generally thought of as being over once the election is held. The Board has noted that "the more generally accepted connotation of a 'campaign' indicates that it ends with the election. 'Campaigns' do not normally continue after the election." *Deming Division, Crane Co.*, 225 NLRB 657 (1976).

---

* Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

1. The union was Professional, Clerical, Ground Maintenance, Parking Lot Attendants, Rental Car Employees, Warehousemen and Helpers Local 995, International Brotherhood of Chauffeurs, Warehousemen, & Helpers of America.

2. The vote was eighteen in favor of the union, thirteen against. Six additional ballots were challenged. Three of the challenges were sustained. The remaining ballots were not counted, as the outcome would not be affected.

On September 9, at the outset of the campaign and contemporaneously with sending the letter in question, the union held a meeting with ten to twelve employees present. There is evidence the union president explained then that the fee reduction offer would apply during contract negotiations after the election, thus indicating compliance with the *Savair* rule. A union official gave a similar explanation to about the same number of employees who attended the single meeting held thereafter, on September 25. Relying on this further communication from the union, the Board argues that any misapprehension on the part of the employees was cured, since the employees in attendance at the meetings would have conveyed the correct information about dues to their co-workers. The problem with this argument is that the only specific communication to other workers discussed in the record is an interpretation of the offer as the employer construes it, not as the union does. One Ruth Kurlytis, who was a supporter of the union, told three different employees that the reduced fee offer would remain open until the election but not afterwards. There is no substantial evidence, therefore, to support the Board's contention that the misleading terms of the letter were clarified by adequate explanations from the union or its supporters.

Where a fee waiver offer is communicated to employees in a confusing fashion and a responsible interpretation of the offer is contrary to the requirements of *Savair*, then the election should be set aside. *NLRB v. Johnson & Hardin Co.*, 554 F.2d 275 (6th Cir. 1977) (per curiam). The Board itself has interpreted a union statement that "there will be no initiation fees for anyone joining now during this campaign" as violating the *Savair* rule, a finding which requires invalidation of the election. *Deming Division, Crane Co.*, 225 NLRB 657 (1976). We think the offer in this case was equally violative of the *Savair* rule. It reasonably can be interpreted as an offer to reduce dues only until the election is held; therefore it significantly impaired the free choice of those voting in the election.

The employer also asserts that the union violated the Act by announcing an intention to forfeit initiation dues if the election went against it. In view of our disposition of the case, it is unnecessary for us to reach the merits of this further contention.

Enforcement of the order is DENIED.