**MAAS & FEDUSKA, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

**Local No. 12, International Union of Operating Engineers, AFL–CIO, Intervenor.**

**No. 78–1832.**

United States Court of Appeals, Ninth Circuit.

Aug. 1, 1979.

Rehearing Denied Aug. 31, 1979.

Howard C. Hay, Sandra L. Price, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for petitioner.

Julius Reich (argued), Reich, Adell, Crost & Perry, Los Angeles, Cal., on brief; Christopher Katzenbach, Washington, D. C., for respondent.

Before BRIGHT,* HUFSTEDLER, and ANDERSON, Circuit Judges.

PER CURIAM:

Maas & Feduska, Inc. (the Company), appeals from an unfavorable decision by the National Labor Relations Board (the Board) upon its complaint that Local No. 12, International Union of Operating Engineers, AFL–CIO (the Union) committed an unfair labor practice, in violation of section 8(b)(3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(b)(3) (1976), by threatening to strike to force payment by the Company of about $18,000 it allegedly owed to Union fringe-benefit trust funds. The Board determined that because the matter of the Company's contributions to the trust funds on behalf of Messrs. Maas and Feduska, two Company supervisors, was a mandatory subject of bargaining, the Union could lawfully exert economic pressure as a means of compelling the Company's payment.[1]

On this petition for review, the Company seeks reversal of the Board's decision on the ground that the issue of Company contributions to the fringe-benefit trust funds constitutes a permissive subject of bargaining over which the Union cannot employ threats of a strike to compel agreement. The Company requests that the Union be required to return all contributions the Company made to the trust funds because of the threatened strike.

Upon complete review of the record, we set aside the Board's finding and direct appropriate relief in favor of the Company.

I. *Factual Background.*

The Company, a corporation solely owned by O. R. Maas and J. N. Feduska, rents heavy equipment to, and operates such equipment for, contractors in the Southern California construction industry. The Union serves as the collective bargaining agent for Company employees.

Since 1970 the Company and Union have executed "short form" collective bargaining agreements which incorporate by reference the provisions of a Master Labor Agreement (MLA) between the Union and various contractors operating in Southern California.[2] The short form agreement specifically excludes the grievance procedure and no-strike clauses of the MLA from its coverage and states that whenever a dispute between the parties arises, the contract does not "limit or modify the right of each party to enforce this agreement or adjust grievances by means of legal or economic procedures."

The MLA requires that an employer contribute, on behalf of its bargaining unit employees, to various fringe-benefit trust funds, i. e., health and welfare, pension, vacation-holiday, joint apprentice training, and joint journeyman retraining funds. The MLA provides that contributions to these funds will be made on the basis of "straight time or overtime hours worked by (or paid) each employee under this Agreement." (Articles VIII, IX & X.) Contributions for salaried employees who participate in the trust funds must be assessed on the basis of 40-hour work weeks.

Maas and Feduska both belong to the Union, notwithstanding their ownership and employment as executives of the Company. Until September, 1971, the two men performed bargaining unit work on virtually a full-time basis, and the Company regularly reported and made payments to the Union trust funds on their behalf on the basis of 40-hour work weeks. Subsequent to September, 1971, although still performing some bargaining unit work, Maas and Feduska devoted most of their time to supervision. The Company continued reporting these executives, along with other em-

* Honorable Myron H. Bright, United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Board's decision, 234 NLRB No. 167, is reported at 97 LRRM 1444 (Mar. 8, 1978).

2. The agreement, entitled "MASTER LABOR AGREEMENT between SOUTHERN CALIFORNIA GENERAL CONTRACTORS ASSOCIATIONS . . . and THE [UNION]," is designed for employers, like Company, who have not signed a recognized Operating Engineers' multiemployer contract.

ployees who performed full-time bargaining unit work, to the fringe-benefit trust funds, but it began contributing to the funds on their behalf on the basis of 20 hours of bargaining unit work per week.[3] Maas and Feduska have received substantial benefits from the trust funds since 1970.

The Company continued reporting and contributing for Maas and Feduska on the minimum 20-hours per week basis until the summer of 1975. In July, 1975, an administrator of the trust funds notified the Company of deficiencies in fringe-benefit contributions on behalf of the Company's two executives and of some minor discrepancies with respect to five employees. The administrator demanded payment of $22,691.91, which included the deficiency, a 10 percent liquidated damages assessment, and the cost of the audit.

The Union threatened to strike if the Company failed to satisfy the alleged deficiency, but the Company initially refused to pay. After certain adjustments were made in the assessment of the deficiency, and notwithstanding the Company's protest of the Union's conduct, the Company eventually paid $17,805.62 to the fringe-benefit trust funds.[4]

II. *Administrative Procedures.*

The Company filed an unfair labor practice charge against the Union with the Board and asserted that an employer's contributions to the fringe-benefit trust funds concerned a permissive subject of bargaining over which the Union could not strike. The Company charged that the Union's strike threat to compel payment of the alleged deficiencies constituted an unfair labor practice in violation of section 8(b)(3) of the Act.

The administrative law judge determined that Maas and Feduska were supervisors under the Act and that the Union could not compel the Company to treat them as employees for collective bargaining purposes. Consequently, the administrative law judge viewed the dispute between the Union and Company over the latter's payment of contributions to Union trust funds on behalf of nonbargaining unit employees as a permissive subject of bargaining.

The Board formulated the central inquiry in the case as follows:

"[T]he issue . . . is whether the threat of Respondent Union to strike over payment of the delinquency due the trust funds concerned a mandatory subject of bargaining."

The Board determined that the dispute over the Company's delinquent contributions constituted a mandatory subject of bargaining and, therefore, that the Union lawfully threatened to strike to compel payment. The Board elaborated upon its conclusion as follows:

"[W]e find that Respondent Union's economic action taken pursuant to the contract was based upon a mandatory subject of bargaining, i. e., protecting encroachment on benefit funds by supervisory participation on a minimum hours, noncontract basis. By its action Respondent Union did not refuse to bargain within the meaning of Section 8(b)(3) of the Act."

III. *Mandatory/Permissive Subject of Bargaining.*

An employer and the union representing its employees must bargain collectively with respect to "wages, hours, and other terms and conditions of employment." *See* 29 U.S.C. § 158(d) (1976). Beyond these issues, which constitute mandatory subjects of bargaining, "each party is free to bargain or not to bargain, and to agree or not

---

**3.** Pursuant to the terms of the MLA, an employer must contribute to the Union trust funds on the basis of "hours worked by (or paid) each employee under this Agreement." An employer's contributions for salaried employees must be made on a 40-hours per week basis. An employee remains eligible for health and welfare benefits if his employer furnished contributions on his behalf for at least 200 hours of work, *i. e.*, the equivalent of 20 hours per week, in the previous work quarter.

**4.** A "Federal Court Complaint" Maas received in August, 1975, regarding the alleged delinquency was withdrawn following the Company's payment to the funds.

to agree" about a subject matter. *NLRB v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958). As to such nonmandatory, or permissive, subjects of bargaining, a union may not strike or threaten to strike to compel agreement. *Ibid.* A union breaches its obligation to bargain collectively within the meaning of section 8(b)(3) of the Act if it insists, by way of economic action, on a permissive subject of bargaining. *A. D. Cheatham Painting Co.,* 126 NLRB 997, 1002 (1960).

"Since it is lawful to insist upon matters within the scope of mandatory bargaining and unlawful to insist upon matters without," *Borg-Warner, supra,* 356 U.S. at 349, 78 S.Ct. at 723, the issue in this case is whether an employer's contributions to union fringe-benefit trust funds on behalf of executives who perform little bargaining unit work falls within the phrase "wages, hours, and other terms and conditions of employment."

■ Maas and Feduska, supervisors and sole executives of the Company, cannot be deemed employees within the collective bargaining obligations of the applicable law, even though their performance of some bargaining unit work made them eligible for participation in the trust funds.[5]

The Board, however, observed that neither the Union nor the Trustees sought to characterize the supervisors as bargaining unit employees so as to bring them within the collective bargaining obligations of the Act. Rather, the Board determined that the scope of mandatory bargaining extends to matters relating to persons outside a bargaining unit, where such "third party" relationship has a significant impact on the terms and conditions of employment of bargaining unit employees.[6]

The Board determined that the Company's conduct in reporting and contributing for the two supervisors on a minimum-hour basis constituted "an economic detriment to the various funds" and that "the impact of many delinquencies in making contributions to such funds would be destructive of the entire trust fund plan." It stated, in effect, that the Company's underpayment of contributions to the fringe-benefit trust funds significantly affected the terms and conditions of employment of bargaining unit employees. The Board concluded that the preservation of the trust funds from erosion due to inadequate employer contributions on behalf of participating supervisory personnel constituted a subject of mandatory bargaining.

■ In reviewing the Board's order, we pay great deference to the Board's expertise in making determinations about mandatory and permissive subjects of bargaining. This is an area in which we "recognize

---

5. Maas and Feduska clearly possess and have exercised the statutory authorities of a "supervisor" within the meaning of section 2(11) of the Act, 29 U.S.C. § 152(11).

Section 14(a) of the Act protects an employer from union pressure to treat supervisory personnel, though union members, as employees, when it states that "no employer subject to [the Act] shall be compelled to deem individuals defined . . . as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." 29 U.S.C. § 164(a).

In addition, section 2(3) of the Act states, in pertinent part, that "[t]he term 'employee' . . . shall not include . . . any individual employed as a supervisor[.]" 29 U.S.C. § 152(3).

6. The Board relies primarily on the following cases in support of this proposition: *Teamsters Union v. Oliver,* 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959) (the minimal rental rate, prescribed by a trucking industry collective

bargaining agreement, that carriers were to pay truck owners who drove their own vehicles in the carriers' service was held to be a mandatory subject of bargaining because the minimum rent issue was closely related to the maintenance of a stable wage structure for the carriers' own employee-drivers and hence, fell within the terms and conditions of employment); *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) (the replacement of bargaining unit employees with an independent contractor's employees for similar work under similar conditions of employment constitutes a statutory or mandatory subject of collective bargaining); *National Woodwork Mfrs. Assn. v. NLRB,* 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); *Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc.,* 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63 (1940).

without hesitation the primary function and responsibility of the Board . . .. *Labor Board v. Insurance Agents,* 361 U.S. 477, 499, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960)." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 496, 99 S.Ct. 1842, 1848–49, 60 L.Ed.2d 420 (1979). The Board's view should be accepted and enforced if it "is not an unreasonable or unprincipled construction of the statute." *Id.* at 497, 99 S.Ct. at 849. In this case, however, the Board did not properly apply the correct legal standard.

In *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 179, 92 S.Ct. 383, 398, 30 L.Ed.2d 341 (1971), the Court stated that an issue is a mandatory subject of bargaining if "it vitally affects the 'terms and conditions' of . . . employment." [7] In reversing the Board's decision that a change in retirement benefits so affected the "terms and conditions of employment" of active employees as to constitute a mandatory subject of bargaining, the Court stated:

> "We think that in holding the 'terms and conditions of employment' of active employees to be *vitally* affected by pensioners' benefits, the Board . . . simply neglected to give the adverb [vitally] its ordinary meaning." [*Pittsburgh Plate Glass Co.,* supra, 404 at 182, 92 S.Ct. at 399 (emphasis in original).]

In concluding that protection of the benefit trust funds from encroachment due to participation by supervisory personnel on a minimum-hours basis constitutes a mandatory subject of bargaining in the instant case, the Board sought to demonstrate the "economic detriment" to the funds in the following manner:

> "Maas and Feduska, without change in salary according to the audit report, and without attempting to delineate the actual hours spent doing unit work part of the time, and supervisory work part of the time, simply cut back their reporting time by one-half, to the minimum for benefit participation as they knew it. . . . The pooled funds aministered [sic] by the Trusts are received from some 2700 employers in southern California. . . . Though a computer-assisted audit program has been installed, the scope of the administrative problem doubtless contributes to the ease of continued reporting of owner-supervisors as apparent employees. The result of the minimum reporting for Maas and Feduska and the nonreporting for five employees is an economic detriment to the various funds. . . . As the Board found in the *Griffith* case referred to above: in the construction industry a substantial number of union members work from job to job, with no certainty that they will remain employed in any particular unit for any period of time; a trust fund arrangement—comprising employees of all employers—for medical emergencies or retirement is necessary; one delinquency by a contributing employer . . . may not be disregarded without disregarding the delinquencies of all others; and the impact of many delinquencies in making contributions to such funds would

---

**7.** In *Pittsburgh Plate Glass Co.,* the Court addressed the question of whether or not the matter of retirement benefits vitally affects active employees' terms and conditions of employment. While observing that active employees may bargain for retirees to protect their own retirement benefits, the Court noted that active employees are not obliged to subsequently negotiate on behalf of pensioners, because the impact of a change in a retirement plan on the terms and conditions of employment rests on "too speculative a foundation on which to base an obligation to bargain." *Pittsburgh Plate Glass Co.,* supra, 404 U.S. at 182, 92 S.Ct. at 399. The Court distinguished *Teamsters Union v. Oliver,* 358 U.S. 283, 79 S.Ct.

297, 3 L.Ed.2d 312 (1959) and *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), by noting that "the impact one way or the other [of a change in the retirement plan] on the 'terms and conditions of employment' of active employees is hardly comparable to the loss of jobs threatened" in those two cases. *Pittsburgh Plate Glass Co.,* supra, 404 U.S. at 180; *see* n. 7, 92 S.Ct. at 398. The Court has recently reaffirmed the *Pittsburgh Plate Glass* standard for determining whether "matters involving individuals outside the employment relationship" are mandatory subjects of bargaining. *Ford Motor Co. v. NLRB,* supra.

be destructive of the entire trust fund plan."

Without a doubt, the Company's conduct in this case affected the trust funds, but, as it did in *Pittsburgh Plate Glass Co., supra,* the Board neglected to give the phrase "vitally affected" its ordinary meaning and failed to support that phrase's application in the circumstances present in this case. It cannot be said on this record that the "matters involving individuals outside the employment relationship" vitally affect the terms and conditions of employment of bargaining-unit members.

The Board does not contend that supervisors' fringe benefits are a mandatory subject of bargaining. It concludes that the Union's strike threat was lawful, however, because the Union was not attempting to coerce agreement on the subject of supervisors' fringe benefits, but on the issue of "protecting encroachment on benefit funds by supervisory participation on a minimum hours, noncontract basis," and that that issue is a mandatory subject of bargaining.

The Board reasons that since employee fringe benefits are mandatory subjects of bargaining, bargaining to protect the integrity of the trust funds is likewise mandatory. Minimum contributions for supervisory employees in violation of the 40-hour requirement affected the terms and conditions of employment for bargaining unit members by eroding the financial integrity of the funds. Therefore, the Board concluded, the violation is mandatory subject of bargaining.

█ To be sure, the employer's conduct vitally affected the benefit trust fund, but only because the Union had agreed to permit certain supervisors to participate in the fund. That agreement did not change the fact that supervisors' health and pension benefits do not, in this context, bear a sufficient relation to employees' terms and conditions of employment to constitute a mandatory subject of bargaining. The Board's analysis misconstrues *Pittsburgh Plate*

*Glass.* The inquiry must focus on the relationship between the "third-party concern," that is, the "matter[ ] involving individuals outside the employment relationship," and the terms and conditions of employment of bargaining-unit members. On this record, there is no evidence to support a finding that the required intimate relationship exists.

In effect, the Board ruled that a party may strike to enforce an agreement on a permissive subject of bargaining, by the simple expedient of holding a *violation* of that agreement to be a mandatory subject of bargaining. To uphold that decision would be to erase the distinction between mandatory and permissive bargaining subjects in a significant number of cases. We decline to do so.

If the Company deliberately and knowingly tried to evade its obligations under its agreement with the Union, the Union has a panoply of legal remedies under the rubric of breach of contract.[8] The Union chose to pursue economic sanctions because it thought that the legal remedies were expensive and cumbersome, or would be ineffective to police compliance by a multitude of small employers. But Congress has decided to remove the strike threat weapon from the Union in this type of dispute, and the Board cannot restore it by recharacterizing the subject of the dispute.

## IV. *The Contractual Right to Strike.*

█ Article III of the short form agreement between the Union and the Company reads in part:

"If the parties are unable to settle or adjust any such grievance or claim of contract violation, nothing contained in this agreement, expressly or by implication, shall in any way limit or modify the right of each party to enforce this agreement or adjust grievances by means of legal or economic procedures."

The Union contends that even if the dispute underlying the threat to strike in this case

---

8. The Trustees could also modify the program so that the minimum benefit payment would

cover the costs of coverage.

does not constitute a mandatory subject of bargaining, the short form agreement, signed by the Company, reserves the right of either party to take economic action over a grievance or alleged contract violation. The Union argues that the agreement authorizes it to strike over permissive subjects of bargaining, conduct which in the absence of the contract would constitute a violation of section 8(b)(3) of the Act. We disagree.

The language of Article III of the short form agreement employs the disjunctive in allowing the parties to settle disputes by "legal *or* economic procedures." (Emphasis supplied). The language of the provision by itself is simply too vague to permit a determination, on this record, that the parties intended to equip each other with weapons of economic self-help, such as strikes or lockouts, to compel agreement about permissive subjects of bargaining—even if prevailing law allowed them to do so.[9] The remedy for a breach of contract claim is in a suit under section 301 of the Act, 29 U.S.C. § 185. We remand this case to the Board to fashion an appropriate remedy for the 8(b)(3) violation.

REVERSED.

BRIGHT, Circuit Judge, concurring.

I concur in the result for reasons stated below.

I believe that if the Company's conduct in reporting and contributing for the supervisors on a minimum-hour basis constituted a substantial economic detriment to the various fringe benefit trust funds, the Board properly could have determined that such conduct vitally affected the employees' terms and conditions of employment. However, on the record before us, it cannot be said that the failure of the Company to fully pay assessments for two supervisory employees to the benefit funds vitally affects employee interests.

The Board asserts that a large number of employers contribute to the trust funds and that a substantial number of union members participating in the benefits program move from job to job. *See* majority opinion at 719–720. It then states that delinquencies by contributing employers on behalf of supervisors and bargaining unit employees moving from job to job, and on behalf of supervisors reported as bargaining unit employees, significantly erode the trust fund plan. The Board, however, has offered no proof that the inadequacy of the Company's contributions substantially affected the pooled trust funds. The Board neither provides information concerning the number of employers who failed to pay full assessments for nonbargaining unit employees nor information respecting any impact on the funds because of employers' inadequate contributions on behalf of such nonbargaining unit personnel. Having failed to disclose the extent of trust fund depletion attributable to contribution deficiencies on behalf of supervisory personnel, the Board has not demonstrated that the inadequacy of those contributions "vitally affected" employee interests.

9. Although the Board did not reach this contention of the Union, the Board notes in its brief that the Union may use economic force to resolve disputes only when those disputes concern mandatory subjects of bargaining.