**SUN–MAID GROWERS OF CALIFORNIA, Petitioner and Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent and Cross-Petitioner.**

No. 78–3636.

United States Court of Appeals, Ninth Circuit.

April 30, 1980.

---

**58**

William D. Claster, Gibson, Dunn & Crutcher, Newport Beach, Cal., for petitioner and cross-respondent.

Andrew F. Tranovich, Washington, D. C., argued, for respondent and cross-petitioner; Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., on brief.

Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.

Before BROWNING and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

Sun-Maid Growers of California (Sun-Maid) petitioned this Court to review and set aside an order of the National Labor Relations Board (Board). The Board cross-petitioned for enforcement of its order.

In 1963, Sun-Maid built a raisin processing plant in Kingsburg, California. Sun-Maid arranged to have its three permanent maintenance electricians placed on the payroll of Electric Motor Shop, for which Sun-Maid agreed to pay Electric Motor Shop cost plus ten per cent. The electricians were members of the International Brotherhood of Electrical Workers (IBEW).

In June 1976, when the IBEW struck Electric Motor Shop, Sun-Maid's electricians went on strike. Sun-Maid then transferred its electrical maintenance contract to Glen Bedgood, an electrical subcontractor who had signed an interim agreement with the IBEW. Bedgood hired the same three maintenance electricians, and for their serv-ices Sun-Maid paid Bedgood cost plus ten per cent.

When the strike ended, these electricians were transferred to the payroll of Bedgood's company, Control Electric, Inc. (Control), but Control did not supervise them. Bedgood rarely visited the plant and never assigned work. Sun-Maid officials delivered the production schedules, assigned the work and decided on priorities. When production schedules were changed, the electricians' hours were also changed. Sun-Maid officials decided when the electricians were to work overtime and when additional electricians were needed.

In August 1977, Sun-Maid decided to replace its three maintenance electricians with five non-union electricians. Sun-Maid hired two new electricians immediately.

The three maintenance electricians asked the IBEW to investigate rumors they were being replaced. At the request of an IBEW official, Bedgood discussed these rumors with Sun-Maid's electrical engineer. He denied the rumors even though he knew that the electricians were being replaced.

In October 1977, Sun-Maid asked the International Association of Machinists (Machinists) to add the classification of electrician to the bargaining unit. When Sun-Maid was asked if it had a contract with the IBEW, the Machinists were told, "No . . . We don't have a contract with the union per se."

Later that month, Sun-Maid wrote the Machinists to confirm the addition of the classification of electrician to the bargaining unit, but the newly hired electricians did not designate the Machinists as their bargaining representative.

Two days later, Sun-Maid told the three permanent maintenance electricians that they would be terminated on the following day. The electricians left the plant. The IBEW's business agent was unsuccessful in his attempt to talk to a Sun-Maid official about the terminations.

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

On November 1, 1977, the IBEW filed charges with the Board, and thereafter the Regional Director issued a complaint.

On March 28, 1978, a hearing was held before an administrative law judge (ALJ). He found that Sun-Maid was a joint employer of the electricians and that Sun-Maid violated sections 8(a)(5) and (1) of the National Labor Relations Act[1] by terminating the electricians without giving the IBEW notice and an opportunity to bargain. The ALJ also found that Sun-Maid violated sections 8(a)(2) and (1) of the Act[2] by treating its newly hired electricians as an accretion to the Machinists' bargaining unit. The ALJ recommended that Sun-Maid be ordered to reinstate its three former electricians by offering to reestablish its former contract with Control and to recognize the IBEW as the electricians' exclusive bargaining representative. The ALJ also recommended that Sun-Maid make whole the electricians' lost earnings.

The Board adopted the findings, conclusions, and recommendations of the ALJ.

In this appeal, Sun-Maid contends that there was no substantial evidence to support the Board's findings. Sun-Maid also contends that the Board abused its discretion in ordering Sun-Maid to reestablish its contract with Control and in ordering it to bargain with the IBEW. We disagree.

■■ A joint employer relationship exists when an employer exercises authority over employment conditions which are within the area of mandatory collective bargaining. *Gallenkamp Stores Co. v. N.L.R.B.*, 402 F.2d 525 (9th Cir. 1968). Here, Sun-Maid controlled the electricians' work schedules, assigned the work and decided when additional electricians were needed. These actions amply support the Board's finding that Sun-Maid was the joint employer of the electricians.

Sun-Maid contends that the Board is precluded from finding that it refused to bargain: first, because the IBEW failed to notify Sun-Maid that it considered Sun-Maid a joint employer; and, second, because the IBEW failed to request Sun-Maid to bargain on its decision to replace the electricians. Neither contention has merit.

*Alaska Roughnecks and Drillers Association v. N.L.R.B.*, 555 F.2d 732 (9th Cir. 1977), the case upon which Sun-Maid relies for its notification contention, involved a certification hearing; Board rules required that notice of the hearing be given to the employer. In addition, the union had stipulated and the Board's Regional Director had found that another company, not Mobil Oil Company against whom the order to bargain was sought, was the employer. In spite of this stipulation and without prior notice to Mobile, the Board found that Mobil was guilty of an unfair labor practice for its failure to bargain with the union. This Court set aside that order. Here, IBEW's representation was not the result of Board certification and the relevant facts are far different from those in the *Alaska Roughnecks* case.

■ Sun-Maid denied rumors that it intended to replace its three maintenance electricians, who were members of the IBEW, when it knew that these rumors were true. After these electricians were terminated, Sun-Maid refused to discuss the terminations with an IBEW representative. Nevertheless, Sun-Maid contends that the IBEW should have requested the opportunity to bargain and that its failure to do it waived its bargaining rights. There is no merit in this contention. *International Ladies' Garment Workers Union v. N.L.R.B.*, 463 F.2d 907 (D.C.Cir.1972).

■ Sun-Maid next contends there was no appropriate unit with which it could have bargained. IBEW's bargaining agreement included all Control's electricians, but that did not excuse Sun-Maid from its duty to bargain with its maintenance electricians. To hold otherwise would permit Sun-Maid to avoid its duty to bargain even though it is a joint employer of these electricians. The Board correctly held "no poli-

1. 29 U.S.C. § 158(a)(5) and (1).

2. 29 U.S.C. § 158(a)(2) and (1).

cy of the Act would appear to be offended by imposing a bargaining obligation upon [Sun-Maid] and Control, jointly, for that portion of the overall unit for which they occupied joint employer status."

 Sun-Maid replaced electricians who had been represented by the IBEW with new employees and placed them in the Machinists' bargaining unit. They were denied the opportunity to choose their bargaining representatives. Nevertheless, Sun-Maid objects to the Board's finding that Sun-Maid violated the Act by treating its new maintenance electricians as an accretion to the Machinists' bargaining unit. The Board's conclusion that Sun-Maid violated the Act is amply supported by the evidence. *Sheraton-Kauai Corp. v. N.L. R.B.*, 429 F.2d 1352 (9th Cir. 1970).

The Board has wide discretion in designing an order to remedy an unfair labor practice. There was no abuse of discretion here.

The order of the National Labor Relations Board is affirmed and shall be ENFORCED.