**TANFORAN PARK FOOD PURVEYORS COUNCIL and the Hapsmith Company, Petitioners,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–7137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1981.

Decided Sept. 21, 1981.

Robert V. Magor, Severson, Werson, Berke, Melchior, San Francisco, Cal., A. Charles Dell'Ario, Wendel, Lawlor, Rosen & Black, Oakland, Cal., for petitioners.

Ruah Lahey, NLRB, Washington, D.C., argued, for respondent; Elliott Moore, NLRB, Washington, D.C., on brief.

Before ANDERSON, FLETCHER and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Two corporations appeal a bargaining order of the National Labor Relations Board

("NLRB"). They claim that they were erroneously determined to be joint employers and erroneously denied a new election or evidentiary hearing. We remand for consideration of the accuracy of a Samoan translation used during the election process; on all other issues, we affirm the NLRB order.

## I.

Tanforan Park Shopping Center ("Tanforan") operates a shopping center in San Bruno, California. The center contains a restaurant complex consisting of various tenant restaurants around a common area. The tenants are by lease required to belong to Tanforan Park Food Purveyors Council ("Council"), a non-profit corporation which operates the common area for the tenants' mutual benefit. Council employs busboys, supply persons, janitors, and dishwashers. These unit employees comprise the bargaining unit which the Union in this case[1] sought to represent.

Tanforan hired the Hapsmith Co. ("Hapsmith") to manage its entire complex, including the restaurant area. Hapsmith also discharges Tanforan's lease obligation to provide administrative assistance to Council. Hapsmith employs Jack Kuks to conduct the day-to-day affairs of the restaurant common area.

The Union won the election to represent the unit employees in January, 1978. Afterwards, Hapsmith and Council filed objections to the Union's conduct prior to the election and the Board's conduct of the election. The Regional Director overruled these objections without a hearing. The NLRB denied the subsequent requests for review and ordered Council and Hapsmith to bargain with the Union. Council and Hapsmith refused to do so and the NLRB subsequently found that they had violated the National Labor Relations Act.

Hapsmith and Council, as petitioners here, dispute that order. They find error

with the NLRB's determination that they are joint employers. They also claim error with the Regional Director's refusal to order a new election based on objections to the Union's campaign material. They assert that, at the least, the Regional Director should have ordered a hearing on these objections.

## II.

The NLRB found Hapsmith to be a joint employer of Council's employees. Petitioners seek to excuse their admitted refusal to bargain with the Union by challenging that NLRB determination. Their challenge fails.

 Whether a corporation possesses sufficient indicia of control to qualify as a joint employer "is essentially a factual issue ...." *Boire v. Greyhound Corp.,* 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849 (1964). The facts of this case accordingly warrant extensive exposition. The NLRB determination of joint employment will be upheld unless it is "arbitrary and capricious." *NLRB v. Red-More Corp.,* 418 F.2d 890, 894 (9th Cir. 1969).

Petitioners present the facts as follows. Council pays the unit employees' worker's compensation insurance premiums and social security payments, assesses the tenants for expenses, and bears all the expenses for maintenance, utilities, and real estate taxes. In addition, unit employee wages, salaries, and fringe benefits are set and paid for by Council through accounts which bear its name. Hapsmith, by contrast, imposes no pricing or other restrictions, does not contribute to restaurant common area expenses, and has no authority to hire, fire, or otherwise influence terms and conditions of unit employees' employment. Finally, unit employees have their own lockers and break area, their personnel files are kept in a Council office, and Kuks' office is separate from Hapsmith's office.

---

1. The Union, Local 340, San Mateo Bartenders and Culinary Workers Union, AFL–CIO, is not a party to this litigation.

The NLRB offers the following facts. The Council, which is composed of a representative of each tenant plus a Hapsmith representative, meets only sporadically and plays little role in daily business, including employee supervision and labor relations. Its manager, Kuks, hires and fires all unit employees, sets their wage rates and vacation, holiday, and work schedules, and supervises them. Kuks was hired by Hapsmith, and all his incidents of employment are solely under Hapsmith's control. He serves at Hapsmith's pleasure—Council once tried to have him fired, but failed. Kuks supervises Council's bookkeeper, who is also a Hapsmith employee. Moreover, Council payroll checks may be signed only by Kuks or two other Hapsmith employees.

The NLRB makes the additional points that Hapsmith has the right to have any unit employee fired and that it may make rules and regulations governing use and operation of the common area.

■ In comparing these various factual claims and eliminating those which are irrelevant, conflicting, or conclusory, the following picture emerges. Council employs the unit employees and controls various incidents of ownership. Hapsmith, through the agency of its employee, Kuks, hires and fires all unit employees, sets their wage rates and vacation, holiday, and work schedules, and supervises them. Hapsmith can accordingly be treated as a joint employer.

■ "A joint employer relationship exists when an employer exercises authority over employment conditions which are within the area of mandatory collective bargaining." *Sun-Maid Growers of California v. NLRB*, 618 F.2d 56, 59 (9th Cir. 1980). The areas within Hapsmith's control—wage rates, vacation, holiday, and work schedules, and employee supervision—lie within the core of mandatory collective bargaining. *See, e. g., Maas & Feduska, Inc. v. NLRB*, 632 F.2d 714, 717–18 (9th Cir. 1979); *Gallenkamp Stores Co. v. NLRB*, 402 F.2d 525, 529 n.4 (9th Cir. 1968). Hapsmith must therefore be considered a joint employer.

That conclusion follows far more strongly than is required by the "arbitrary and capricious" standard which governs review of NLRB determinations of joint employment, *NLRB v. Red-More Corp., supra*, at 894. Indeed, the breadth of Hapsmith's control over fundamental areas of mandatory collective bargaining makes its position as a joint employer emerge *a fortiori* from *Boire, Sun-Maid*, and *Gallenkamp, supra*, in which cases a determination of joint employment was made from lesser indicia of joint control.

### III.

Council and Hapsmith (hereinafter "employers") objected to various campaign statements presented to unit employees. They claim that the election should be set aside and the order to bargain denied or, alternatively, that a hearing on the issue must be held. The Regional Director overruled these objections. We reverse and remand in part and affirm in part the NLRB order.

■ This court may overturn the decision of the Regional Director if it determines that she abused her discretion in reviewing the facts. *NLRB v. J.R. Simplot Co.*, 322 F.2d 170, 171 (9th Cir. 1963). If the employees have been prevented from freely registering their choice in a representation election, the court may set the election aside and deny enforcement of the NLRB order. *NLRB v. Winchell Processing Corp.*, 451 F.2d 306, 310 (9th Cir. 1971). Further, the court may require a hearing on a lesser showing than that required to overturn the election. Employers need only assert facts which would, if true, require a new election. *NLRB v. G.K. Turner Associates*, 457 F.2d 484, 487 (9th Cir. 1972).

### A. The Alleged Preferential Treatment Based on Pre-Election Support

The employers object to statements made in the Union letter sent to the employees dated January 10, 1978. The letter alleged-

ly implies that employees who are not Union members cannot vote to ratify a Union contract. Furthermore, the employers claim that the letter conditions a waiver of Union dues on the employee's pre-election support of the Union.

 The NLRB will set aside elections when a union promises to treat union members differently from other employees in return for pre-election support. *Knapp-Sherrill Co.*, 171 N.L.R.B. 1547 (1968). The Supreme Court has held that if a union promises to waive dues because of pre-election support, the election will be set aside. *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). Furthermore, the election should be set aside if the fee waiver is communicated in such a confusing fashion that it implies that waiver hinges on pre-election support. *NLRB v. Aladdin Hotel Corp.*, 584 F.2d 891, 893 (9th Cir. 1978).

 The disputed statements do not violate these principles of the election process. The letter states that a Union contract must be ratified by "you, the members, before it is adopted." It also states that dues will be delayed until at least "thirty-one days after the members approve their contract." These statements refer to the Union members' ability to ratify the contract and to defer fees for a month. Neither is conditioned on joining the Union prior to the election. Nor do they deny the same rights to other employees. Absent a showing that the Union promised differential treatment in return for pre-election support, the employers' conclusory assertions do not support setting aside the election.

### B. *The Alleged Misrepresentation of Material Facts*

The employers also claim that the Union materially misrepresented benefits employees would receive. In the January 10 letter, the Union described benefits members received at a nearby market. The employ-

ers did not demonstrate, however, that the statements in the letter are material misrepresentations of fact. Instead, they allege that part-time workers might have been confused about their own rights.

 An election will be set aside if the Union has misrepresented information to the voters. *Hollywood Ceramics Co.*, 140 N.L.R.B. 221 (1962). The party contesting the election must allege that the information is false and material. *NLRB v. Snokist Growers, Inc.*, 532 F.2d 1239 (9th Cir. 1976). The employers' allegations of misrepresentation manifestly do not meet that standard.

### C. *The Notice of the Election and the Ballot*

Finally, employers claim that the translation from English into Samoan of the official NLRB notice of election, prepared for the thirteen native Samoan unit employees, was erroneous. The English to Samoan translation used in this election is the official one promulgated by the NLRB for use in American Samoa. The employers submitted to the Regional Director a retranslation of the ballot from Samoan back into English, prepared by a native Samoan employee. This retranslation reads:

> Do you want someone to argue or to stand for you?

> \* \* \* \* \* \*

> Under the National Labor Relations Act all the employees should have an agent to their own people to bring someone to represent or help their own organization on their job. To argue for them through their own representatives, to work together with them, who against in the progress of anyone or all these things unless the Union and the Management in any states who permitted these agreement, according to the government for the safety of the Union says that all employees should an [sic] are suppose [sic] to join the Union.

The employers claim that this retranslation suggests that the Samoan version of the notice is garbled and confusing.

The NLRB has proclaimed itself particularly "concerned with the protection of its procedures designed to provide fair elections." *Columbia Tanning Corp.*, 238 N.L.R.B. 125 (1978). In addition, the NLRB has an affirmative duty to present election notices to employees in languages they will understand. *Marriott In-Flite Service Div. of Marriott Corp. v. NLRB*, 417 F.2d 563, 567 (5th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); *Fibre Leather Mfg. Corp.*, 167 N.L.R.B. 393 (1967). This goal is not met if the presentation, in whatever language, is incomprehensible to the reader.

If the above retranslation presented by the employers is accurate, then it is likely that confusion resulted among the Samoan employees. Employers assert that such confusion would be so great as to undermine the election process. This assertion, if true, would require setting aside the election. Given the duty of the Board to protect its own procedures, and to present *comprehensible* election notices to employees, we hold that the Board was in error in denying an evidentiary hearing on the issue of the Samoan translation. Hence, we remand so that the NLRB may hold a hearing on this claim.

We REVERSE AND REMAND on the issue of the Samoan translation. In all other respects, the NLRB order is AFFIRMED.

FLETCHER, Circuit Judge, concurring:

I concur in the result reached by the majority but I write separately to make clear my understanding of our holding in Part III C.

The employers made only one claim below regarding the Samoan translation of the sample ballot. They alleged that the translation conveyed the impression that the Board endorsed the Union. In support of this contention, the employers submitted two retranslations from the Samoan. Only one of these, the retranslation prepared by the Samoan employee, appears to support the claim.[1]

The Regional Director rejected this challenge to the election on the ground that a perfect translation from English into Samoan was not to be expected, because Samoan does not have the vocabulary necessary to render the technical language of federal labor law. She held that the translation was not so misleading as to prevent employees from making an informed choice in the election.

Translation is not an exact science. When the Board supplies employees with foreign language election notices and ballots, however, the translation must provide those who do not read English with the basic information necessary to an informed choice. *See Marriott In-Flite Service Div. of Marriott Corp. v. NLRB*, 417 F.2d 563, 564 (5th Cir. 1969). Contrary to the employers' assertion here, an exact correspondence between the English version and the translation is neither possible nor necessary.

According to my understanding, we remand this case to the Board because the Samoan employee's affidavit, if believed, tends to show that the Samoan ballot suggested Board endorsement of the Union. Since nearly half of the 27 bargaining-unit employees were Samoan, misinformation on this issue might have prevented them from making an informed choice in the election. This issue should not have been resolved by the Board without an evidentiary hearing. At the hearing, the Board should determine whether the translation was so misleading or confusing as to suggest Board endorsement of the Union, and, if so, whether it prevented the employees from understanding the choices available to them.

---

1. The disputed paragraph is quoted by the majority, *supra*, p. 1362.