**PLAYHOUSE SQUARE FOUNDATION,**
Petitioner, Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent, Cross–
Petitioner.**

Nos. 88–6401, 89–5175.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1991.

Decided Aug. 19, 1991.

Gregory A. Jacobs (argued and briefed), Michael J. Frantz, Robert L. Larson, Joanne C. Brant, Thompson, Hine & Flory, Cleveland, Ohio, for Playhouse Square Foundation.

Aileen A. Armstrong (briefed), Deputy Associate Gen. Counsel, Richard A. Cohen (argued), Charles P. Donnelly, Jr., William M. Bernstein, John C. Truesdale, Executive Secretary, N.L.R.B., Office of the General Counsel, Washington, D.C., Frederick Calatrello, Director, N.L.R.B., Cleveland, Ohio, for N.L.R.B.

Before KEITH and KRUPANSKY, Circuit Judges, and ENGEL, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Petitioner-cross-respondent, the Playhouse Square Foundation (Company), petitioned for review of a decision of the National Labor Relations Board (NLRB) overruling the Company's objections to the results of a certification election and ordering the Company to enter into collective bargaining discussions with Local 756 of the International Alliance of Theatrical Stage Employees (Union). The NLRB cross-petitioned for enforcement of its bargaining order.

The Company owns and operates three live performance theatres located in downtown Cleveland, Ohio. This dispute stemmed from the Union's efforts to obtain certification as exclusive bargaining agent for the Company's box office and ticket sales personnel, a bargaining unit com-

prised of 35 employees. In March, 1985, the Union petitioned the NLRB for authorization to conduct a certification election at the Company. On April 4, 1985, the Union and the Company entered into a Stipulation for Certification Upon Consent Election. The election was held on April 26, 1985, at the conclusion of a three week campaign. The Union prevailed by a vote of 20 to 15.

Prior to the certification of the election results, the Company filed several objections with the NLRB, challenging the validity of the election. In three of its four objections, the Company alleged that the Union had—through its business agent, Richard Worswick—extended a series of unlawful promises to the Company's employees in an effort to induce them to support the Union. According to the Company, one of Worswick's promises to the members of the potential bargaining unit was an offer to reduce the Union's initiation fee from $1,000 to $25 for those employees who signed Union authorization card *prior* to the scheduled election.

■■ It is an unfair labor practice for a labor organization to offer a waiver or reduction of its membership fees to those employees who join the union *prior* to the conduct of a certification election. *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). A union tendering such an offer to the members of a potential bargaining unit is, in effect, purchasing "endorsements and paint[ing] a false portrait of employee support during its election campaign." *Id.*, at 277, 94 S.Ct. at 499. It is not an unfair labor practice, however, for unions to offer a fee waiver that is available on equal terms to new members who join the organization either before or *after* an election. *NLRB v. First Union Management*, 777 F.2d 330, 335 (6th Cir.1985).

The hearing officer assigned to conduct an evidentiary hearing of the Company's objections to the election determined, as a matter of fact, that the Union's offer of a reduced initiation fee was not conditioned on an employee joining the Union prior to the election, and that, as a matter of law, the Union had not committed a *Savair* vio-

lation. From the conflicting testimony of numerous Union and Company witnesses, the hearing officer concluded that the fee reduction offer was open on equal terms to all concerned employees both before and after the election.

■ Generally, "this court will not disturb credibility evaluations by an ALJ who observed the witnesses' demeanor." *Roadway Express, Inc. v. NLRB*, 831 F.2d 1285, 1289 (6th Cir.1989). Without commenting upon the validity of the hearing officer's credibility determinations, this court concludes that her ultimate legal conclusion that no *Savair* violation was committed—a conclusion subject to de novo review—was at odds with the credited testimony and, therefore, was contrary to law.

The testimony of numerous Union witnesses, most of whom were employees in the identified bargaining unit, disclosed substantial confusion as to the period of time during which the Union's tendered offer was available to affected employees. Several employees testified that they were certain that the offer was available only before the election; several were confused about the precise terms of the offer; and a few employees were equally certain that the offer was open both before and after the election. Although the hearing officer attempted to anchor her disposition in credibility assessments crediting those employees who testified in a manner beneficial to the Union, and discrediting those who testified in the Company's favor, she failed to expressly discredit the testimony of several employees whose statements belied some confusion as to the time-frame and conditions of the Union's offer. For example, Company employee Monica Berens, whose testimony the hearing officer expressly credited, attested that she could not remember being informed as to whether the fee reduction offer was available both before and after the election. Hrg.Tr. at 110. Additionally, although the hearing officer described employee Jeff Klein's testimony as "internally consistent and forthright," Klein indicated confusion about the terms of the offer when he provided two contradictory answers to the question of whether any Union agent had offered to reduce the

initiation fee only if Klein promised in advance of the election to vote in the Union's favor.[1]

Viewed in its entirety, the testimony of the witnesses credited by the hearing officer did *not* clearly prove that the employees eligible to participate in the bargaining unit were fully aware of the period and conditions of the Union's fee-waiver offer. Rather, their testimony indicated material confusion as to the period during which the employees could avail themselves of the offer. The very existence of such confusion supports the Company's claim that the Union committed a *Savair* violation. As the Company argues, *any* "confusion" regarding the terms of the offer tends to support the premise that, in contravention of the rule pronounced in *Savair*, at least some of the employees were under the impression (whether false or otherwise) that they were compelled to join the Union prior to the election in order to qualify for the substantial initiation fee reduction. *See NLRB v. Aladdin Hotel Corp.*, 584 F.2d 891, 893 (9th Cir.1978) ("Where a fee waiver is communicated to employees in a confusing fashion and a responsible interpretation of the offer is contrary to the requirements of *Savair*, then the election should be set aside."); *NLRB v. Johnson & Hardin Co.*, 554 F.2d 275, 276 (6th Cir. 1977) (per curiam) (court noting "sufficient confusion ... regarding the waiver of initiation fees to interfere with the employees' free choice" in violation of *Savair*). Accordingly, because the credited testimony exhibits significant ambiguity with respect to the terms and effective period of the fee waiver offer, the hearing officer's determination that *Savair* was not violated is not supported by substantial evidence. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

The Union has also argued before this court that any impression conveyed to the employees that their eligibility for a reduced fee was conditioned upon a pre-election expression of support for the Union was effectively repudiated by the Union's dissemination shortly before the election of a flyer that provided in part:

> INITIATION FEE: SHOULD A BOX OFFICE WHICH IS NOT REPRESENTED BY THE LOCAL DECIDE THEY WOULD LIKE TO BE SO REPRESENTED, THE $1000 FEE IS WAIVED AND THOSE NEW MEMBERS WOULD ONLY PAY $25.00

The Union correctly observes that this language contains no temporal limitation; it does not indicate that the fee waiver was available only prior to the election. The very absence of a temporal limitation, however, supports the conclusion that the Union did not at any time prior to the election adequately inform the employees of the terms of the fee reduction offer, thereby engendering confusion. As the testimony before the hearing officer demonstrated, the flyer was not sufficient to dispel the belief—held by several employees—that they had to sign an authorization card before the election in order to be eligible for the reduced fee. *Cf. K.D.I., Inc. v. NLRB*, 829 F.2d 5, 7 (6th Cir.1987) (union "fact sheet" ostensibly announcing fee waiver available both before and after election too ambiguous in its terms to serve as clear repudiation of earlier, oral representations made in violation of *Savair*).

For the foregoing reasons, the judgment of the NLRB overruling the Company's objections to the conduct of the election is hereby REVERSED, and the NLRB's

---

1. Klein's answers to the following two questions, posed within seconds of each other, were not "internally consistent."

Q. The $25 initiation fee issue, did anybody ever say anything on the order of, you would only be allowed to do that if you voted yes?
A. That's what I understood....

    *    *    *    *    *    *

Q. Did anybody say from the union, did anybody from the union say that you could join only for $25 if you voted yes for the union?
A. No.

Hrg.Tr. at 154. This is not to suggest that the hearing officer should have discredited Klein's testimony, but rather is cited as an example of the confusion surrounding the precise terms upon which the Union made the fee waiver offer.

cross-petition for enforcement of its bargaining order is DENIED.