[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court is an appeal from a decision of the Rhode Island State Labor Relations Board, which found that the Town of Burrillville violated G.L. § 28-7-13(6) by refusing to bargain with the Local 369, International Brotherhood of Police Officers over the implementation of a General Order issued by the Chief of Police dictating procedures to be followed when a police officer is injured while on duty. Jurisdiction is pursuant to G.L. § 45-35-15.
 Facts/Travel
A review of the record reveals the following facts. The appellant, the Town of Burrillville (Town), is an employer as defined in the Rhode Island Labor Relations Act. See G.L. §28-7-3. The appellee, the Rhode Island Labor Relations Board, is an administrative agency. The Local 369, International Brotherhood of Police Officers Union (Union) is a labor organization within the meaning of the Rhode Island Labor Relations Act and is the bargaining representative for the members of the Burrillville Police Department. The Town and the Union entered into a collective bargaining agreement which was in force during the relevant time period.
On or about March 10, 1999, the Chief of the Police Department, Colonel Bernard Gannon (Colonel Gannon), summoned Officer McBrier and Officer Macomber to his office to review a proposed policy outlining procedures with which the members of the Police Department would be required to comply in order to receive injured-on-duty benefits. Shortly after the meeting, Colonel Gannon implemented the policy as General Order 99-1. The parties did not engage in bargaining prior to Colonel Gannon's implementation of General Order 99-1 (General Order).
The General Order establishes policies and procedures to be followed by a police officer who is injured in the line of duty (hereinafter injured-on-duty) for the Burrillville Police Department (Department).[1] The General Order requires,inter alia, that an officer injured-on-duty submit the following: a form reporting the injury; a form setting forth statements by any witnesses; a form authorizing the officer's medical care providers to release medical information regarding the work related injury to the Police Department; a form to be filled out by the police officer's immediate supervisor; and a statement of diagnosis from the officer's treating physician indicating the diagnosis and whether or when the officer will be able to perform his or her regular duties.
In addition to requiring the submission of the forms identified above, the General Order dictates that an officer who does not return to work after his or her initial medically excused absence must submit another statement from a medical doctor in order to continue to be carried on injured-on-duty status.[2] The officer is required to notify his or her physician of the Town's requirement that the physician produce a statement of information concerning whether the officer's injury was a work related injury, the prognosis, notes on the officer's rehabilitation, and length of time the officer will be unable to perform his or her duties. Pursuant to Section 5, an officer who fails to produce the second Physician's statement within 14 days of the injury will not be reimbursed for sick leave utilized prior to the submission of the additional documentation. After the Department receives the additional medical documentation to substantiate the continuance of the injured-on-duty claim, the officer will be carried on injured-on-duty status from that date forward.
Section 10 of the General Order specifies procedures to be followed when the Town requires an injured officer to be examined by a Town physician. In pertinent part, this section mandates that an officer who "fails to appear for two (2) scheduled appointments with the Town physician . . . will be suspended for two (2) days without pay." Finally, Section 11 of the General Order requires that when an officer whose status is "injured-on-duty" leaves the state for more than 24 hours, he or she must notify the Department and "[i]n such case, the officer's [injured-on-duty] status shall be changed and the officer shall be required to use furlough time."
Subsequent to the implementation of the General Order, on or about August 24, 1999, the Union filed a charge with the Rhode Island State Labor Relations Board (Board), alleging that the Town violated the Labor Relations Act by issuing the General Order without engaging in bargaining with the Union. The parties met at an informal conference on September 24, 1999; however, they failed to resolve the matter. Thereafter, on August 25, 2000, the Board issued a complaint against the Town based on the Union's Unfair Labor Practice Charge. The complaint was heard before the Board in a formal hearing on January 21, 2001. At the hearing, Colonel Gannon, Officer McBrier, and Officer Macomber testified to the Department's previous practice for reporting injuries sustained in the line of duty, the content of the General Order, and the circumstances surrounding its issuance.
On April 29, 2002, the Board issued its written decision holding that (1) the General Order addresses mandatory subjects for bargaining because its provisions impact receipt of injured-on-duty benefits and discipline, (2) inclusion of a management-rights clause in the Collective Bargaining agreement did not constitute a waiver of the right to bargain over the content of the General Order, (3) the Union did not waive its right to bargain over the issuance of the General Order, and (4) the Union proved by a fair preponderance of the evidence that the Town committed a violation of G.L. § 28-7-13(6).
The Town filed a timely appeal of the Board's decision in which it argues that it had no duty to bargain because the content of the General Order is not a mandatory subject for bargaining; the General Order did not constitute a material change in the Police Department's procedures; and the Union waived its right to bargain by accepting a management-rights clause in the collective bargaining agreement and by failing to specifically request bargaining.
 Standard of Review
General Laws § 42-35-15(g) guides this Court in its review of the Rhode Island State Labor Relations Board's decision and provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section of the Administrative Procedures Act precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Kachanis v. Bd. ofReview, Dep't. of Employment and Training, 638 A.2d 553, 555 (R.I. 1994); Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Accordingly, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record."Rocha v. State Public Utilities Comm., 694 A.2d 722, 725 (R.I. 1997); Interstate Navigation Co. d/b/a The Block Island Ferry v.Div. of Public Utilities Carriers of R.I., 824 A.2d 1282, 1288 (R.I. 2003). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Barrington Sch.Comm. v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981) (even if the court were to conclude that one witness's testimony was improper, it would reverse the agency's conclusions only if said testimony were the sole basis of the agency's finding); Bunch v. Bd. ofReview, Rhode Island Dep't. Employment and Training,690 A.2d 335, 337 (R.I. 1997). "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.' [Rhode Island Temps, Inc. v.Dep't. of Labor and Training, Board of Review, 749 A.2d 1121, 1124 (R.I. 2000)] (quoting Center for Behavioral Health, RhodeIsland, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998))." Arnoldv. R.I. Dep't. of Labor, 822 A.2d 164, 167 (R.I. 2003); RyanIron Works, Inc. v. NLRB, 257 F.3d 1, 7 (1st. Cir. 2001). Questions of law are "not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607; 376 A.2d 1, 7 (1977); Hometown Properties v.Rhode Island Dep't. of Envtl. Management, 592 A.2d 841, 843 (R.I. 1991). The Court may modify a decision of the board if,inter alia, the findings are "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record" or otherwise affected by legal error. R.I. Gen. Laws §42-35-15 (g)(5).
 Collective Bargaining
"Our Legislature has created a structure of labor relations which parallels in many significant respects the federal scheme."Belanger v. Matteson, 115 R.I. 332, 338, 346 A.2d 124, 129 (1975). Both the National Labor Relations Act and the Rhode Island Municipal Police Arbitration Act recognize that the obligation to bargain applies to wages, hours and all other terms and conditions of employment. G.L. § 28-9.2-4;[3]29 U.S.C. § 158(d).[4] As such, "[t]hese matters are clearlymandatory subjects of collective bargaining, and the parties are required to submit them to the bargaining process." 5 Theodore Kheel, Labor Law § 18.02[1], 18-34 (2000) (emphasis in original). Examples of mandatory subjects "are wages, bonuses, vacations, holidays, sick time, leaves, hours, lunch breaks, rest breaks, health insurance, pensions, profit sharing, dental insurance, job posting, seniority, bumping, layoffs, subcontracting, and transfers." Hirsch and Farrrel Labor andEmployment in Rhode Island § 8-4(c), 8-29 (2003). Recognizing the parallels between the state and federal statutes governing the obligation to bargain, the Rhode Island Supreme Court has "consistently looked to federal law for guidance in the field of labor law." DiGuilio v. Rhode Island Brotherhood of CorrectionalOfficers, 819 A.2d 1271, 1273 (R.I. 2003); see alsoBarrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 120 R.I. 470, 479, 388 A.2d 1369, 1375 (1978); Town ofNarragansett v. International Ass'n of Fire Fighters, Local1589, 119 R.I. 506, 508, 380 A.2d 521, 522 (1977). "Board law is clear that disciplinary policies and procedures and employee discharges constitute mandatory subjects of bargaining."Ritchey, Inc. 2002 NLRB LEXIS 140, *76-77 (NLRB, 2002) (citations omitted) ("`work rules that could be grounds for discipline are mandatory subjects of bargaining'") (quotingPraxair, Inc., 317 NLRB 435, 436 (1995); King Soopers, Inc. v.NLRB, 2003 NLRB Lexis 655, *4).
The term, "wages," has been broadly construed to "embrace . . . within its meaning direct and immediate economic benefits flowing from the employment relationship." W.W. Cross Co. v. NLRB,174 F.2d 875, 878 (1st. Cir. 1949) (term "wages" covers a group insurance program); Inland Steel Co. v. NLRB, 170 F.2d 247, 251 (7 th. Cir. 1948) ("the term `wages' as used in Section 9(a) must be construed to include emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship."); Jones Dairy Farm v. NLRB,909 F.2d 1021, 1027 (7 th. Cir. 1990) (Court affirmed the board's conclusion that an employer's implementation of a "light-duty" program for injured workers was a mandatory subject for bargaining. In so holding, the Court relied, in part, upon the fact that the program would have impacted the employees' receipt of sick pay and disability benefits.); see also 5 Theodore Kheel, Labor Law § 19.01, 19-3 (2000) ("pensions; profit-sharing plans; Christmas and other bonuses; stock purchase plans; merit wage increases; insurance plans . . . and other services" fall within the definition of wages and are mandatory subjects for bargaining).
In analyzing the phrase, "terms and conditions of employment," the Board has stated that the concept is "a broad one — and deliberately so, for Congress intended it to be broad." PeerlessPublications, Inc. v. NLRB, 283 N.L.R.B. 334, 335 (NLRB 1987);see also Fibreboard Paper Products Corp. v. NLRB,379 U.S. 203, 210 (U.S. 1964) (Supreme Court held that the "contracting out" of work formerly performed by union members was an issue that fell within the definition of "terms and conditions of employment" and was, therefore, a mandatory subject for bargaining); Albany v. Helsby, 48 A.D.2d 998, 999 (N.Y. A.D. 1975) aff'd 38 N.Y.2d 778 (1975) (Court stated that "[s]uch issues as the length of work year, vacations, sick leave and personal leave are accepted as being part of the terms and conditions of employment." Court further found that the "the general subject of `work rules' also involves a condition of the employment and, consequently, is mandatorily negotiable. . . .");see also 5 Theodore Kheel, Labor Law § 20.02, at 20-5 (2000) (the phrase terms and conditions of employment "has been construed broadly to include many aspects of the employment relationship").
An employer commits an unfair labor practice when it implements a material change in the terms and conditions of employment in an area that is a mandatory subject of "collective bargaining without giving the bargaining representative both reasonable notice and an opportunity to negotiate about the proposed change." Porto-King Building Systems v. NLRB, 14 F.3d 1258, 1261 (1994); see Litton Fin. Printing Div. v. NLRB,501 U.S. 190, 198 (1991) (citing NLRB v. Katz, 369 U.S. 736, 747 (1962)). Courts "give substantial deference" to labor boards' determinations concerning mandatory and permissive subjects of bargaining. Jones Dairy Farm v. NLRB, 909 F.2d 1021, 1027 (7 th. Cir. 1990) (citing Ford Motor Co. v. NLRB, 441 U.S. 488, 497 (1979); Jack Thompson Oldsmobile, Inc. v. NLRB,684 F.2d 458, 461-62 (7th Cir. 1982); Maas Feduska, Inc. v. NLRB,632 F.2d 714, 718-19 (9 th. Cir. 1979)).
In the instant appeal, the Town first asserts that the provisions of the General Order do not constitute mandatory subjects for bargaining and, as such, the Town contends it was not required to bargain over the implementation of the General Order. In support of its argument, the Town characterizes the General Order as an administrative or managerial action that simply requires the submission of forms. On this point, the Town argues that the record before the Board was bereft of any evidence that would warrant a finding that the General Order qualifies as a mandatory subject for bargaining.
On its face, the General Order impacts both wages and the terms and conditions of the officers' employment. The provisions of the General Order impact wages by imposing strict new requirements with which officers must comply in order to qualify for injured-on-duty status and wages. The General Order affects the officers' terms and conditions of employment by changing an officer's status from "injured-on-duty" to "sick" when the officer does not return to work subsequent to an initial medically excused absence and by declining to reimburse sick time utilized by an officer prior to his or her physician's submission of supplemental medical documentation substantiating the continuance of the injured-on-duty claim. The General Order changes the calculation of vacation time for an officer injured in the line of duty by requiring the injured officer to take furlough time when he or she leaves the State for more than 24 hours while injured. Further, the General Order imposes mandatory discipline upon an officer who fails to attend two scheduled appointments to be evaluated by the Town's physician.
The Court recognizes the reasonable intent of the General Order: to improve reporting and documentation of injured-on-duty claims, to require proper medical documentation, and to encourage officers to cooperate with the Town in its efforts to evaluate the claims of injury. The content of the General Order, however, clearly does impact wages, sick time, and vacation time as well as impose mandatory discipline under some circumstances. Therefore, the Board did not err in finding that the General Order addresses matters that are mandatory subjects of bargaining. Peerless Publications, Inc. v. NLRB, 283 N.L.R.B. 334, 335 (NLRB 1987) ("rules or codes of conduct governing employee behavior with constituent penalty provisions for breach necessarily fall well within the definitional boundaries of `terms and conditions' of employment"). Furthermore, the substantial evidence in the record, including the text of the General Order and the testimony of Officer Robert McBrier, supports a conclusion that the provisions of the General Order constituted a substantial and material change from the Police Department's previous practices concerning injured-on-duty claims. Accordingly, the Town was not exempted from its obligation to bargain. W-I Forest Products Co. v. NLRB, 304 N.L.R.B. 957, 959 (1991) ("The Board has long held that an employer is not obligated to bargain over changes so minimal that they lack [a substantial and material] impact.").
On appeal, the Town also contends that the Board erred by failing to find that the Union waived its rights to bargain over the content of the General Order. Here, the Town asserts the following two arguments: (1) the language of a management-rights clause set forth in the Collective Bargaining Agreement authorized the Town to implement the General Order without engaging in bargaining, and (2) the Union waived its right to bargain by failing to request bargaining.
A waiver of the right to bargain "may arise from the express terms of a contract, from the failure of a party to request negotiations when informed of prospective changes, or may be inferred from the history of the parties." 2-12 Peter N. Lareau,National Labor Relations Act: Law Practice § 12.04[9] [a] (2nd ed. 1999). Thus, "through the collective bargaining process, a union may waive the employees' statutory right to bargain over a term or condition of employment." Local Union No. 47, Int'lBhd., 927 F.2d 653 (D.C. Cir. 1991). The Town argues that the Union waived its right to bargain over the content of the General Order by agreeing to a management-rights clause in the Collective Bargaining Agreement. In pertinent part, the management-rights clause provides that the Town will retain the right to issue "through its Town Manager . . . all Rules and Regulations, not inconsistent with the terms of the Agreement, governing the conduct of the Burrillville Police Department." In sum, this management-rights clause gives the Town the right to implement rules and regulations for the Police Department so long as they are consistent with the terms of the Collective Bargaining Agreement.
The Board found that Section 10 of the General Order appeared to be inconsistent with Article 2.3 of Collective Bargaining Agreement. Having found the General Order to be potentially inconsistent with the Collective Bargaining Agreement, the Board determined that the management-rights clause did not relieve the Town from the obligation to bargain. Article 2.3 of the Collective Bargaining Agreement concerns Discharge and Discipline and provides that "the procedure for discharge and discipline of Police Officers shall be in accordance with the Law Enforcement Bill of Rights, (G.L. 42-28.6-1), as amended." General Laws §§42-28.6-1 through 15 constitute the Law Enforcement Officers' Bill of Rights and outline the procedural requirements applicable "[whenever] a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal. . . ." This legislation does not prohibit a police chief from instituting summary punishment of officers. "Summary punishment is described as a two-day suspension without pay, imposed for minor violations of departmental rules and regulations involving an incident in which the facts are not in dispute. If the aggrieved officer believes the punishment to be unreasonable, he may `appeal such punishment directly through the provisions of this subtitle.' International Bhd. of PoliceOfficers, Local No. 302 v. Portsmouth, 506 A.2d 540, 541 (R.I. 1986).
Section 10 of the General Order mandates a two day suspension without pay for a police officer who misses two appointments with the Town's doctor. The General Order neither references the Law Enforcement Officers' Bill of Rights, nor provides for any appeals process for discipline imposed pursuant to Section 10. Thus, Section 10 of the General Order does appear to be inconsistent with Article 2.3 of the Collective Bargaining Agreement inasmuch as it mandates discipline without providing for an avenue of appeal. Accordingly, the Board's finding is supported by the probative evidence, and the Board's conclusion that the management-rights clause did not excuse the Town from the obligation to bargain over the contents of the General Order was not clearly erroneous.
Additionally, the Court notes that the management-rights clause refers to the Town as retaining the right to implement Rules andRegulations through the Town Manager. The clause does not specify that the Town retains the right to implement General Orders through the Chief of Police without bargaining. Thus, General Orders issued by the Chief of Police do not fall into the category of standards over which the Town retained its exclusive right of regulatory implementation set forth in the management-rights clause. Chicago Tribune Company v. NLRB,974 F.2d 933 (1992) (Courts are not required to defer to the Board on issues of contract interpretation). Thus, as a matter of law, the Court finds that the Union did not waive its right to bargain over the General Order by agreeing to the inclusion of the management-rights clause in the Collective Bargaining Agreement.
A union will be deemed to have waived its right to bargain when it receives sufficient notice of a contemplated change in non-contractual work conditions and fails to request bargaining prior to implementation. W-I Forest Products Co. v. NLRB, 304 N.L.R.B. 957, 960 (1991); see also NLRB v. Spun-Jee Corp.385 F.2d 379, 384 (2d Cir. 1967). In the instant matter, the Town asserts that the Union waived its right to bargain over the General Order by failing specifically to request bargaining. In finding that the Union did not waive its right to bargain, the Board indicated that the matter was a "close question." The Board's decision reflects that it relied, in part, upon evidence from the Union President, who testified that after he met with Colonel Gannon and stated the Union's concerns over the General Order, it was his understanding that the parties would proceed as they had in the past and meet with their respective lawyers to "hash things out." After review of the record as a whole, this Court agrees that the issue of whether the Union waived its right to bargain was a close one. The Court holds, however, that the board's finding was supported by competent evidence. Accordingly, the Court must affirm the Board's findings on this issue. SeeRyan Iron Works, Inc. v. NLRB, 257 F.3d 1, 6 (1st. Cir. 2001) (Court will not disturb the Board's findings as to the credibility of witnesses as long as the Board's position "represents a choice between two fairly conflicting views" and "does not overstep the bounds of reason"); Arnold v. R.I. Dep't.of Labor, 822 A.2d 164, 167 (RI 2003) ("Court defers to a fact finder's determinations that are made during an administrative proceeding and are supported by legally competent evidence.")
 CONCLUSION
After a review of the entire record, this Court finds that the Board's decision in its entirety is supported by reliable, probative, and substantial evidence in the record, is not in excess of the authority granted to it by statute or ordinance, and is not affected by error of law. The decision is not in violation of constitutional, statutory or ordinance provisions or made upon unlawful procedure, is not arbitrary, capricious, or characterized by an abuse of discretion. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed.
[1] In Rhode Island police officers who become incapacitated from the performance of their work duties as a result of injury or illness suffered in the line of duty are compensated subject to the provisions of G.L. §§ 45-19-1 through 45-19-19.
[2] An officer who remains out of work without submitting "another doctor's note substantiating the reason for the continued absence, shall be taken off [injured-on-duty] status and will be carried on sick leave."
[3] Section 28-9.2-4 of the Rhode Island Municipal Police Arbitration Act reads as follows:
 "§ 28-9.2-4. Right to organize and bargain collectively. The police officers in any city or town have the right to bargain collectively with their respective cities or towns and be represented by an organization in the collective bargaining as to wages, rates of pay, hours, working conditions, and all other terms and conditions of employment."
[4] In pertinent part, 29 U.S.C § 158(d) states that the obligation to bargain extends to "wages, hours, and other terms and conditions of employment."